UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

NORTHCENTRAL TELECOM, INC.

      Plaintiff,

v.                                                                                   Case No. 2:10-CV-225

AT&T SERVICES, INC.                                           HON. GORDON J. QUIST

      Defendant.
_____/

## OPINION

      Plaintiff, Northcentral Telecom, Inc. ("Northcentral"), sued Defendant, AT&T Services, Inc., in state court on August 3, 2010, seeking a declaratory judgment that the liquidated damages provision in the parties' contract is an unenforceable penalty provision. AT&T timely removed the action to this Court on the basis of diversity jurisdiction and filed a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking enforcement of the same provision. AT&T has filed a motion for summary judgment. Although oral argument has been requested, the Court has determined that it would not be helpful in rendering this decision. For the reasons set forth below, the Court will deny the motion.

### I. Background

      On July 1, 2009, the parties entered into a contract (the "Master Agreement") under which Northcentral agreed to perform EF&I ("Engineer, Furnish and Installation") services for AT&T within a designated geographical territory, including Wisconsin and parts of Michigan's Upper Peninsula. (Def.'s Mot. for Summ. J. Ex. B at 54, 61.) The Master Agreement contains a liquidated damages provision that is to apply in the event of a "Network Outage" substantially caused by

Northcentral. (*Id.* at 26.) A "Network Outage" is defined as "an incident that causes network degradation, network interruption, or loss of service as established in Appendix G." (*Id.* at 8.) Appendix G, in turn, contains a three-page chart, which identifies several types of services or technologies that may be adversely affected in the event of a Network Outage (e.g., Transport, Switched Circuit, DSL Access Services) and corresponding liquidated damages in the amount of either $200,000.00 or $400,000.00, depending on the length of the outage and the type of service or technology affected. (*Id.* at 156-58.) The liquidated damages provision itself reads as follows:

> Supplier acknowledges that a Network Outage may cause damage to AT&T in an amount impossible to ascertain. Supplier agrees to pay AT&T the sum established in Appendix G, as liquidated damages and not as a penalty, per occurrence in the event thereof caused substantially by Supplier's Service, whether or not by breach of warranty and whether before, during or after any Warranty Period, from AT&T's acceptance of the Service which is the subject of the Network Outage.

(*Id.* at 26.)

The incident giving rise to this case occurred at approximately midnight on November 18, 2009, during the course of work performed by Northcentral. (Compl. ¶ 9.) Northcentral submitted two documents to AT&T after investigating the incident that explain the events of that night – a report entitled "Key Learning's [sic] from Vendor Caused Outage" and a narrative of the events as described by Heather Allen, Northcentral's Lead Installer. (Def.'s Mot. for Summ. J. Exs. C, D.) According to Allen's statement, while attempting to make the "Return-B connection to the ground bar located at the bottom of the Mini-BDFB," she had some difficulty loosening the back nut. (*Id.* Ex. D.) She decided to skip over that connection for the moment, and move on to the next step in the sequence. While she was working on the next step, her junior installer attempted to loosen the difficult nut using a "non-insulated tool," which "came into contact with the bus bar, causing the 'B' side of the BDFB to go down." (*Id.* Ex. C.) According to the Key Learnings Report, Allen failed to complete the sequence in the correct order, which "set[] into motion the chain of events that

2

caused the outage," and "[a]bsolutely no non-insulated tools should have been used inside the BDFB." *Id.*

After Allen noticed that her junior installer had used a non-insulated socket to try to loosen the difficult nut, she told the junior installer to notify AT&T's on-site technician, Larry Pascaretti, who immediately came to the scene. (*Id.* Ex. D.) No statement from Pascaretti has been submitted, but according to Allen's narrative, the three of them worked together, although with Pascaretti making some decisions, to replace the fuse and eventually restore power. (*Id.*) According to the Key Learnings Report, disciplinary action was taken against both Northcentral employees involved in the incident (Allen and her junior installer), including the termination of the junior installer who used a non-insulated tool inside the BDFB. (*Id.* Ex. C.)

Thereafter, AT&T gathered and recorded the information relating to the incident in its Service Disruption Reporting System ("SDRS"). (Def.'s Br. in Supp. of Summ. J. at 6.) According to the SDRS report, Northcentral's actions caused a system failure that affected 15 DS3 lines for a total of 112 minutes. (Def.'s Mot. for Summ. J. Ex. E at 1.) Under Appendix G, the service impact to a DS3 facility is calculated based upon "DS1 Minutes of Outage (MOO) Service-Affecting." (*Id.* Ex. B at 156.) Because each DS3 line is equivalent to 28 DS1 lines, 15 DS3 lines translates into 420 DS1 lines. Thus, AT&T calculated liquidated damages by multiplying 420 DS1 lines by 112 minutes of outage, for a total of 47,040 minutes of outage. (Def.'s Br. in Supp. of Summ. J. at 6.) Under Appendix G, where the service/technology involved is "Transport" and DS3 facilities are affected, liquidated damages are $200,000.00 if minutes of outage are between five and ten thousand, and $400,000.00 if minutes of outage exceed ten thousand. (Def.'s Mot. for Summ. J. Ex. B at 156.)

3

By letter dated April 27, 2010, AT&T informed Northcentral that liquidated damages in the amount of $400,000.00 would be assessed because the service interruption exceeded the 10,000 minute threshold set forth in Appendix G and because Northcentral had conceded responsibility in the documents it submitted to AT&T after the incident. (*Id.* Ex. H.) On May 17, 2010, AT&T issued a "Claim for Damages" to Northcentral. (*Id.* Ex. I.) The document bills Northcentral for $400,000.00 and describes the cause of the damages as follows: "On 11/18/2009, a technician working for Northcentral caused a non-insulated wrench to come into contact with a power buss. This created a power spike that traveled through the office and shut down various pieces of transport equipment." (*Id.*)

Northcentral did not pay the Claim for Damages; instead, it filed this action in Marquette County Circuit Court, alleging that the system failure resulted in ascertainable damages to AT&T in the range of ten to fifteen thousand dollars and that enforcement of the liquidated damages provision under the circumstances presented here amounts to a penalty. (Compl. ¶¶ 20-21.) AT&T removed the action to this Court and filed a counterclaim and subsequent motion for summary judgment seeking enforcement of the liquidated damages provision.

## II. MOTION STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

4

fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. ANALYSIS

As set forth in the Master Agreement, Texas law applies to this dispute. (Def.'s Mot. for Summ. J. Ex. E at 18.) Under Texas law, a liquidated damages provision is enforceable so long as it meets three criteria. The first two criteria, which have been deemed the "anticipated harm" test, are, first, that the harm caused by a breach must be incapable or difficult of estimation, and second, that the amount of liquidated damages must be a reasonable forecast of just compensation. The third criteria, which has been deemed the "actual harm" test, requires that the liquidated damages not be disproportionate to actual damages. If they are disproportionate, the clause will be declared a penalty and recovery limited to actual damages. *See Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex. Ct. App. 1991) (setting forth all three factors and the "anticipated harm" and "actual harm" terminology); *In re Dow Corning Corp.*, 419 F.3d 543, 549-550 (6th Cir. 2005) (interpreting Texas law to require that all three criteria be satisfied before a liquidated damages clause may enforced); *Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 232 (5th Cir. 1995) (same). As the party seeking to prevent enforcement of the liquidated damages provision, Northcentral bears the burden of proof. *In re Dow Corning Corp.*, 419 F.3d at 550.

Generally, whether a liquidated damages provision is enforceable, or instead an unenforceable penalty, is a question of law for the court to decide. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). "Sometimes, however, factual issues must be resolved before the legal question can be decided. For example, to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant

5

may be required to prove what the actual damages were." *Id.*; *see also TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, 328 S.W.3d 580, 589 (Tex. Ct. App. 2010) (explaining that where a party asserts that liquidated damages are a penalty because they are disproportionate to actual damages, that party "must prove the amount of [the other party's] actual damages to show that the liquidated damages amount was not an approximation of actual loss").

Northcentral asserts that as to all three criteria, further discovery is needed before it may properly respond. It has submitted a Rule56(d)[1] affidavit from its expert, William Bradshaw, alleging that AT&T's description of how damages occurred in its Claim for Damages "reflects damages that are ascertainable" and which "would have been calculated by AT&T in the ordinary course of business," and that further discovery is needed before Northcentral can fully respond to the factual descriptions set forth in AT&T's motion. (Pl.'s Resp. Ex. 8.) Among other things, Northcentral seeks further discovery regarding the extent of AT&T's actual damages and what evaluation, if any, AT&T undertook to determine that the $200,000.00 and $400,000.00 liquidated damages amounts set forth in Appendix G were reasonable forecasts of the actual damages they would suffer in the event of a Network Outage.

The Court agrees with Northcentral that any decision as to the enforceability of the liquidated damages provision would be premature at this time and should await further discovery. *See* Fed. R. Civ. P. 56(d). As to the latter two criteria – the reasonableness of the forecast and whether it was disproportionate to actual damages – the discovery Northcentral seeks is relevant. The extent of actual damages must be established before it can be determined whether they are disproportionate to liquidated damages. *See Baker*, 812 S.W.2d at 55 ("The party asserting [disproportionality] is

---

[1] Under Fed. R. Civ. P. 56(d), formerly subdivision (f), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may. . . defer considering the motion or deny it."

required to prove the amount of the other party's actual damages, if any, to show that the actual loss was not an approximation of the stipulated sum."). It is also relevant to question of the reasonableness of the forecast. *See Guido & Guido, Inc. v. Culberson Cnty.*, 459 S.W.2d 674, 678 (Tex. Civ. App. 1970) ("The amount of actual damages is relevant to the issue of whether the stipulation for damages is reasonable, for it must be so in order to be enforced and must bear a reasonable relationship to the actual damages contemplated or, in fact, suffered as a result of the breach."); *see also R. Conrad Moore & Assocs., Inc. v. Lerma*, 946 S.W.2d 90, 96 (Tex. Ct. App. 1997) ("[A]t least the fact of Moore's actual damages should have been determined by a jury before the trial court could consider whether the liquidated damages were a reasonable forecast of just compensation."). What evaluation AT&T undertook in setting the $200,000.00 and $400,000.00 liquidated damages amounts is also relevant to determining the reasonableness of the forecast. *See In re Dow Corning*, 419 F.3d at 552-53.

With regard to the first criteria – difficulty of estimation – AT&T argues that damages were impossible to predict at the time the Master Agreement was executed because damages could vary greatly depending on the number of customers affected (which varies by geographical area), the type of customer affected (business or residential), and the type of service or technology involved in the outage (data, voice, etc.). Rather than creating a "byzantine chart or list of formulas to account for all possible scenarios," AT&T asserts, the parties reasonably agreed to Appendix G. (Def.'s Reply at 4.)

Although it is a closer call, the Court finds that further discovery would benefit the Court in deciding this issue as well. It does not appear that the extent of damages were impossible to estimate because unknown variables may come into play or because the variables were simply not predictable. *See e.g.*, *Baker*, 812 S.W.2d at 55 (explaining that an accurate determination of the damages from the loss of a single photograph is virtually impossible and noting "the inherent

7

difficulty in determining the value of a piece of art, the broad range of values and long term earning power of photographs, and the unknown potential for fame of the subject"); *In re Dow Corning*, 419 F.3d at 551-52 (finding that damages were difficult to calculate where they had to account for, among other things, future medical and other obligations of twenty-seven different plaintiffs relating to allegedly faulty breast implants). Instead, it appears to have been a question of which of several known variables would apply and for how long the outage might last. If a formula or chart, even if complex, could have accounted for all known variables, then it may be that damages were not incapable or difficult of estimation at the time of the Master Agreement. In any event, Northcentral should have the opportunity to explore the possibility. In addition, the Court notes that discovery is not set to close in this matter until December 7, 2011 and that the parties have until January 6, 2012 to file dispositive motions.

Therefore, the Court will deny AT&T's motion for summary judgment and allow discovery to continue in this matter. Northcentral raises other issues in opposition to AT&T's motion for summary judgement relating to causation, mitigation of damages, and whether the incident actually qualifies as a Network Outage as defined in the Master Agreement. Because the Court has determined that further discovery is needed in this matter, it declines to address these issues at this time. Northcentral is free to raise them in its own dispositive motion at a later date.

## CONCLUSION

For the reasons set forth above, AT&T's motion for summary judgment will be denied.

A separate Order will issue.


Dated: May 31, 2011                             /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE